**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| BRANDY MICHELLE PAGE, | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:21-CV-00753-SDJ-CAN |
| v. | § § | |
| COMMISSIONER, SSA, | § § | |
| Defendant. | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g), denying her claim for social security benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

**PROCEDURAL HISTORY OF THE CASE**

On December 5, 2019, Plaintiff Brandy Michelle Page ("Plaintiff") protectively filed an application for supplemental security income ("SSI") under Title XVI ("Title XVI") of the Social Security Act [TR 89-98]. Plaintiff alleges an onset of disability date of April 19, 2017 [TR 50]. On March 25, 2020, Plaintiff's claim was initially denied [TR 73], and upon reconsideration on June 11, 2020 [TR 87], Plaintiff's application was again denied. Plaintiff requested an administrative hearing ("Hearing") [TR 114-115], which was held before an Administrative Law Judge ("ALJ") on February 10, 2021 ("Hearing") [TR 1-37]. The Hearing was held via telephone due to the COVID-19 pandemic. At Hearing, the ALJ heard testimony from Plaintiff and a vocational expert ("VE") [TR 1-37]. Plaintiff was represented by counsel at Hearing [TR 4].

On April 20, 2021, the ALJ issued an unfavorable decision denying Plaintiff's application [TR 47-64]. On, June 8, 2021, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 44-46]. The Appeals Council denied Plaintiff's request on July 27, 2021, making the decision of the ALJ the final decision of the Commissioner [TR 38-43]. On September 29, 2021, Plaintiff filed the instant suit [Dkt. 1]. On March 4, 2022, the Administrative Record was received from the Social Security Administration [Dkt. 13]. Plaintiff filed her Opening Brief on June 8, 2022 [Dkt. 18], and the Commissioner filed its Brief on July 28, 2022 [Dkt. 19].

## FINDINGS OF THE ALJ

*Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 416.920(a). First, a claimant who is engaged in substantial gainful employment at the time of her disability claim is not disabled. *Id.* § 416.920(a)(4)(i). Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience. *Id.* § 416.920(a)(4)(ii). Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* § 416.920(a)(4)(iii). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she is capable of performing her past work based on her residual functional capacity. *Id.* § 416.920(a)(4)(iv). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. *Id.* § 416.920(a)(4)(v). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts

to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

*ALJ's Disability Determination*

After hearing testimony and conducting a review of the evidence, the ALJ made the following sequential evaluation [TR 47-64]. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 5, 2019, the application date [TR 52]. At step two, the ALJ found Plaintiff has severe impairments of obesity, cervical and lumbar spine disorder, left shoulder disorder, depressive disorder, and anxiety disorder [TR 52]. The ALJ also found that the claimant had the following non-severe impairments: nicotine dependence, asthma, low vision, and diabetes mellitus type 2 [TR 52]. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926) [TR 53]. At step four, the ALJ determined Plaintiff has the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can frequently, but not constantly handle and finger objects with the non- dominant left upper extremity. She can occasionally reach overhead with the non- dominant left upper extremity. She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She can frequently balance. She can never climb ladders, ropes, and scaffolds. She should avoid hazards such as dangerous moving machinery and unprotected heights. She can understand, remember, and carry-out detailed, but not complex tasks and instructions. She can have occasional interaction with the general public. She can adapt to changes and respond to customary work pressures in a routine work setting.

[TR 55]. The ALJ noted that in determining this RFC, the ALJ "considered all of the claimant's medically determinable impairments, including those that are not severe" [TR. 53]. Continuing the step four analysis, the ALJ determined that Plaintiff cannot perform any past relevant work [TR 58]. Plaintiff was born on October 28, 1976, and was 43 years old, defined as a "younger

individual" on the date of application [TR 59]. Plaintiff has at least a high school education [TR 59]. At step five, based on Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff could perform, such as document preparer (DOT #29.587-018), addresser (DOT #209.587-010), and cutter/paster (DOT #249.587-014) [TR 59]. The ALJ, thus, concluded Plaintiff had not been under a disability from December 5, 2019, through the date of the ALJ's decision, April 20, 2021 [TR 60].

## STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, No. 20-60856, 2021 WL 5563333, at *1 (5th Cir. Nov. 29, 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted)); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence is "merely enough that a reasonable mind could arrive at the same decision"; the evidence "need not be a preponderance." *Webster*, 2021 WL 5563333, at *1 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). Conflicts in the evidence are resolved by the ALJ; the Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

# ANALYSIS

Plaintiff argues the RFC contains internal inconsistencies and thus is not supported by substantial evidence; specifically, Plaintiff urges analysis of the following "inconsistencies is either absent or incorrect" which necessitates remand: (1) the ALJ erred in failing to find Plaintiff's diabetes (and related bilateral neuropathy) constituted a severe impairment, resulting in the ALJ's failure to include related functional limitations in Plaintiff's RFC [Dkt. 18 at 10-12], and (2) the ALJ conducted a flawed, inaccurate and/or improper "objective-subjective" symptom analysis [Dkt. 18 at 12-15].

*Non-Severe Impairment(s)*

At Step Two of the sequential evaluation process, it is the claimant's burden to demonstrate she suffers from a severe impairment;[1] there is no burden on the Commissioner to prove the absence of a claimant's alleged impairments. *See Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (burden of establishing the presence of a medically determinable impairment with acceptable medical evidence is on the claimant); *see also Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999) (Plaintiff has the burden to present medical evidence that supports her claim of a severe impairment). In the Fifth Circuit "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340 (5th Cir. 1984)) (cleaned up); 20 C.F.R. § 404.1520(a)(4)(ii).

---

[1] To establish that a severe impairment is present, a claimant must meet her burden of demonstrating (1) a functional impairment, (2) attributable to a medically determinable impairment, that (3) limits her ability to perform basic work activities. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Stone*, 752 F.2d at 1101.

The Step Two severity analysis is simply a threshold determination; and, for that reason, the Fifth Circuit generally holds that failure to make a severity finding at Step Two generally is not reversible error when an ALJ continues with the sequential evaluation process.[2] *Dise v. Colvin*, 630 F. App'x 322, 324 (5th Cir. 2015) ("[B]ecause the ALJ proceeded to step five of the analysis, any failure to find additional impairment severe at step two does not justify remand."). Indeed, Courts routinely apply a harmless error analysis "if the ALJ shows that the impairments deemed non-severe were still considered along with any severe impairments in determining whether the claimant meets a listing and, if not, in determining the claimant's residual functional capacity." *Owen v. Comm'r*, No. 2:19-CV-073-RSP, 2020 WL 1663533, at *2 (E.D. Tex. Apr. 3, 2020).[3]

Plaintiff urges that the ALJ should have found that her diabetes constitutes a severe impairment. In support of her position, Plaintiff advances that "[n]owhere in the record exists an "in range" result for blood glucose levels or A1C averages and none are cited by the Commissioner. These out-of-range results are disregarded by the ALJ and this prejudices" [Dkt. 18 at 11]. Plaintiff also argues that she has neuropathy which was not considered by the ALJ. To begin, Plaintiff offers no legal authority that an absence of "in range" results dictates that the ALJ must find Plaintiff's diabetes is a severe impairment. The mere presence of a diagnosed or observable medical condition does not establish the presence of any particular degree of impairment. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008) ("a showing of the mere presence of a condition is not sufficient" to

---

[2] The rationale for this principle is that the severity finding at Step Two is a threshold assessment that allows the ALJ to dismiss a claim without further evaluation. *Factory v. Comm'r*, No. 4:15-CV-00731-CAN, 2017 WL 1177992, at *5 (E.D. Tex. Mar. 29, 2017) (citing *Delgado v. Colvin*, No. 5:13-cv-137, 2014 WL 3361752, at *3-4 (N.D. Tex. July 9, 2014)). Thus, when an ALJ proceeds past step two, the case does not turn on the question of severity, but instead, whether the claimant's impairments prevent him or her from performing work. *Id.*

[3] To be clear, however, while ALJs must consider the combined effect of both severe and non-severe limitations in their RFC analysis "the ALJ does not have to include those limitations in the RFC if there is insufficient evidence that they produce limiting effects." *Sistrunk v. Kijakazi*, No. 3:21-cv-413, 2022 WL 3045315, at *2 (S.D. Miss. Aug. 2, 2022).

establish impairment). Similarly, nowhere in Plaintiff's briefing does she identify a neuropathy diagnosis existing in the record. Plaintiff's arguments alone—absent objective medical evidence—is not enough to substantiate such alleged condition. *Harrell v. Brown*, 862 F.2d 471, 478 (5th Cir. 1988).

Moreover, in this case, as the Commissioner correctly points out, the ALJ acknowledged Plaintiff's alleged non-severe impairment(s), and specifically explained why he did not find diabetes to be a severe impairment in this case [TR 52-53]. The ALJ noted:

> The claimant did not mention that [her diabetes] limit[s] her ability to work in her Function Reports…There was no indication that diabetes []required other than conservative care with oral medications and with negligible effect on the ability to work…Regarding diabetes, the claimant has denied symptoms of excessive thirst or urination, or no heat or cold intolerance and the assessment of diabetes has been noted as without complications"

[TR 52-53]. *See e.g., Shannon v. Kijakazi*, No. 20-00490, 2022 WL 5082025, at *5 (S.D. Ala. Sept. 7, 2022) (finding no error at Step Two where Plaintiff did not list purported impairments in her disability or function reports); *Tegra C. v. Comm'r*, No. ADC-19-667, 2019 WL 6733114, at *5 (D. Md. Dec. 10, 2019) (finding no step two error where Plaintiff did not mention nonsevere impairment in her function report). The ALJ then made sure to further specify in his opinion that he still considered any non-severe impairments, combined with Plaintiff's severe impairments when determining Plaintiff's RFC. [TR 53 (in determining this RFC, the ALJ "considered all of the claimant's medically determinable impairments, including those that are not severe")].[4] The ALJ did not err in failing to enumerate diabetes (or neuropathy) as one of Plaintiff's severe impairments. Furthermore, even if it could be argued that the ALJ erred at Step Two, it is undeniable that the ALJ continued to Step Five in the sequential evaluation process. *See Enriquez*

---

[4] Further supporting this conclusion, at Step Three, the ALJ further noted "I have evaluated diabetes mellitus under SSR 14-2p. A person with diabetes mellitus and obesity may have more severe complications than the effects of each of the impairments considered separately." [TR 53].

*v. Acting Comm'r of Soc. Sec. Admin.*, No. EP-3-17-CV-00329, 2018 WL 2293967, at *3 (W.D. Tex. May 18, 2018) (finding that the ALJ committed harmless error because he took into account plaintiff's chief complaints related to her fibromyalgia in formulating the RFC even though he found it non-severe at step two); *see also Gibbons v. Colvin*, No. 3:12-cv-0427, 2013 WL 1293902, at *16 (N.D. Tex. Mar. 30, 2013) (holding if the ALJ erred in failing to recognize certain impairments as severe at step two, this error was harmless because the ALJ considered the impairments in the RFC); *see also Herrera v. Comm'r*, 406 Fed. Appx. 899, 903 (5th Cir. 2010) (per curiam) (holding that the ALJ's failure to assess the severity of a claimant's impairments at step two is not a basis for remand where the ALJ proceeds beyond step two and determines that a claimant, despite severe impairments, retained the RFC to do other work).

### *Consideration of Plaintiff's Alleged Limitations Caused by Non-Severe Impairments*

Plaintiff further asserts that the ALJ failed to account for her diabetes (and neuropathy) in the RFC determination at Step Four.[5] Plaintiff argues that the ALJ should have included greater limitations in her RFC involving both her hands and arms, due to upper extremity issues, and limitations for her neck pain. Specifically, Plaintiff alleges that her diabetes causes dizziness,

---

[5] The RFC is an assessment, based on all the relevant evidence, including, but not limited to: medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 WL 374184, at *5. The RFC provides the claimant's maximum ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. § 416.945(a); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC is the most a claimant is able to do despite her physical and mental limitations. The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). "The ALJ's RFC decision can be supported by substantial evidence even if he does not specifically discuss all the evidence that supports his decision, or all the evidence that he rejected." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Further to this point, the ALJ as a "factfinder" is not required to incorporate limitations in the RFC that he did not find to be supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991); *Kozlowski v. Colvin*, No. 4:13-cv-020-A, 2014 WL 948653, at *7 (N.D. Tex. Mar. 11, 2014). The inquiry for the Court is whether the record as a whole "yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *see Perez v. Barnhart*, 416 F.3d 457, 461 (5th Cir. 2005); *Jones v. Saul*, No. 4:20-CV-00772-BP, 2021 WL 2895867, at *4-5 (N.D. Tex. July 9, 2021) (finding no error where the ALJ determined that [the treating physician's] opinion was inconsistent with the record as to the limitations he expressed).

issues with her balance, and has further caused pain in both arms, elbows, wrists, and neck [Dkt. 18 at 12]. She states that the pain was aggravated when she was in a sitting position and was relieved by resting her head [Dkt. 18 at 12].

Notably, state agency medical consultants, Patty Rowley, M.D., and Randal Reid, M.D. found Plaintiff capable of a range of medium and light work (not sedentary) [TR 70-71, 82-84]. Nevertheless, giving significant benefit of the doubt to Plaintiff's subjective complaints, the ALJ limited Plaintiff to a range of sedentary work, and took into consideration the precise complaints Plaintiff raises now when formulating the RFC by including restrictive postural limitations and hazard precautions "to account for the impact of obesity and apparent neuropathy" [TR 58]. Consider a portion of his discussion of the evidence and subsequent findings:

> Treatment records note complaints of pain in different joints including the arms, shoulders, neck, hip, hands, and feet, but little intervention (Exhibit 3F, 19F, 20F, 29F). Furthermore, while the medical evidence certainly warrant some limitations, it is not consistent with the claimant's allegations. Diagnostic imaging includes an MRI of the left shoulder which showed glenohumeral joint effusion distending the subscapularis recess and no definite evidence of a rotator cuff tendon tear or labral tear (Exhibit 11F/1). MRI of cervical spine for neck pain showed a left paracentral disk protrusion present at C3-4 with slight flattening of thecal sac and reversal of the upper cervical curvature representing muscle strain or spasm (Exhibit 11F/2). There is no stenosis at any level (Exhibit 8F). EMG was normal and the available evidence does not appear to account for the alleged radicular symptoms involving both her upper and lower extremities (Exhibit 8F/18). Furthermore, physical examinations are limited and relatively benign (Exhibit 7F/25). For example, a May 2018 pain management evaluation noted that the neck and upper extremities were within normal limits although she had some tender points in the cervical spine (Exhibit 20F/18). In March 2019, the claimant was observed as moving all extremities spontaneously, well appearing, and in no acute distress (Exhibit 19F/9). At an October 2019 exam, the claimant's neck was supple, with full range of motion and she was in no acute distress (Exhibit 3F/3-4). In April 2020, the claimant reported that she was doing well on her current medications and that she was no longer seeing her rheumatologist, which certainly suggests her symptoms were well-controlled (Exhibit 20F/1). In December 2020, the claimant's treatment care provider indicated that the claimant was 100 percent disabled and that Neurontin was no longer effective. however the corresponding examination did not support this as the claimant was noted as well appearing, in no acute distress, moving all extremities spontaneously, with normal mood and affect (Exhibit 21F/7, 8). I note

>that I have considered the claimant's provider remark about the claimant being 100% disabled; however, such a conclusory statement does not qualify as medical opinion evidence under the regulations and intrudes upon an issue reserved to the Commissioner. To the extent one might argue it necessarily connotes greater limitations than are reflected by this decision, it is unsupported and inconsistent with the evidence and thus is not at all persuasive.
>
>The claimant was referred for steroid injections and radio frequency ablations, however, it does not appear that these interventions were exhaustively pursued (Exhibit 19F/6, 20F/18). *I have accounted for the symptoms related to her neck, back, and shoulder by limiting the claimant to sedentary work; frequent, but not constant handling and fingering objects with the non-dominant left upper extremity; occasional reaching overhead with the non-dominant left upper extremity; occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; frequently balancing; and never climbing ladders, ropes, and scaffolds. I also limits the claimant to avoiding hazards such as dangerous moving machinery and unprotected heights.*

[TR 56-57 (emphasis added)]. *See Alix v. Colvin*, No. 4:12-cv-01493, 2013 WL 578551, at *10 (S.D. Tex. Aug. 26, 2013) (finding the ALJ properly limited plaintiff to sedentary work when finding diabetes as a severe impairment); *see also Medrano v. Astrue*, No. 09-CA-584, 2010 WL 2522202, at *6 (W.D. Tex. June 17, 2010) (finding the ALJ properly considered plaintiff's diabetes by limiting her to sedentary work).

Plaintiff further contends that the ALJ did not properly address her "bilateral hand limitations" [Dkt. 18 at 14]. However, Plaintiff fails in briefing this issue to point the Court to any record medical evidence of bilateral hand use limitations, citing only a medical note that Plaintiff experienced numbness [Dkt. 18 at 12-14], and the Commissioner has drawn attention to the plethora of medical professionals who examined Plaintiff and did not report any issues in her upper extremities [Dkt. 19 at 5]. Indeed, a review of the records reveals significant medical evidence contrary to Plaintiff's position; it is not the Court's job to reweigh the same evidence the ALJ considered. Plaintiff's EMG was normal and belied her subjective complaints of radicular

symptoms in her upper and lower extremities [TR 56, 304, 307, 567].[6] Further, while an MRI of the left shoulder showed some joint effusion, it revealed no definite evidence of a rotator cuff tendon tear or labral tear [TR 56, 377]. Moreover, after a thorough review of the record, the Court was not able to locate any objective medical evidence of any right shoulder issues. In addition, while an MRI of her cervical spine showed a left paracentral disk protrusion present at C3-4 with slight flattening of the thecal sac, and evidence of a muscle strain or spasm, it revealed no stenosis at any level and no other abnormalities [TR 56, 378]. Plaintiff's clinical exams were benign both in the months leading up to and during the relevant period and revealed no neurological abnormalities, and no other abnormalities involving her extremities [TR 254, 261, 270-71, 272-73, 279, 281-82, 283-84, 288, 292, 295-296, 314, 316, 319, 321, 511-13, 547, 549, 550, 553, 557, 558, 569, 575-77, 579, 584, 588]. Plaintiff exhibited full range of motion in her extremities, full range of motion of her neck, and intact sensation and motor activity, which contradicts her allegations of additional RFC limitations [TR 296, 314, 319, 558, 569, 579, 584, 588]. In addition, Plaintiff reported during an April 2020 visit that she was doing well on her current medications, and she was no longer seeing her rheumatologist [TR 550]. *See James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986) (impairments controlled by medication are not disabling). The Court rejects Plaintiff's point of error.

### "*Credibility*" *Analysis and Failure to Seek Treatment*

Plaintiff next argues that the ALJ erred in his "credibility" analysis of Plaintiff's condition. More specifically, Plaintiff argues that the ALJ performed a flawed analysis of Plaintiff's subjective complaints, citing particularly to the ALJ's statement regarding Plaintiff's access to

---

[6] Plaintiff avers there is no medical evidence of normal EMG results and the exhibit the ALJ cites to with normal EMG results does not exist [Dkt. 18 at 10 n.3]. It appears the ALJ mistakenly cited to Exhibit 8F when citing to normal EMG results; however, normal EMG results were recorded in Exhibit 7F [TR 304, 307].

REPORT AND RECOMMENDATION – Page 11

healthcare. Plaintiff's counsel contends Plaintiff did not stop seeking treatment, but instead her preferred doctors ceased taking her insurance. Besides this alleged inaccuracy, Plaintiff does not point the Court to any other inaccuracies the ALJ is alleged to have relied upon. The Commissioner in response argues that the ALJ relied, not on Plaintiff's access to healthcare, but instead on the glaring inconsistencies in Plaintiff's testimony and her daily activities. *See Leggett*, 67 F.3d at 565 n.12; *see also Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990) (per curiam) (Any "inconsistencies between [Plaintiff's] testimony about his limitations and his daily activities were quite relevant in evaluating his credibility.").

The Court agrees that there were "striking" inconsistencies in Plaintiff's testimony that support the ALJ's assessment of Plaintiff's subjective symptoms, which the ALJ appropriately outlined in his opinion,

> I note that the claimant's March 2020 Function Report (Exhibit 3E) and May 2020 Function Report (Exhibit 7E) are strikingly different in the claimant's self-reported level of functioning. For example, in March 2020, the claimant reported that she could clean, do small amounts of laundry, mop, and take out the trash (Exhibit 3E/3). However, merely two months later, the claimant reported that she was unable to perform chores due to pain (Exhibit 7E/3). This is also inconsistent with reports to her doctor in April and May 2020 that she was doing "doing well"/ "okay" on medications (Exhibit 20F/1, 20). Thus, the claimant's self-reports are inconsistent and undermine her allegations, given the absence of evidence of deterioration that might explain the deviations. Similarly, the claimant was apparently able to perform a job requiring her to stand 9 hours per day until quite proximate to the alleged onset date (Exhibit 4E/2), yet she testified she could only stand 10 minutes at a time. The medical evidence of record, particularly the rather benign examinations and lack of interventions does not explain such deterioration. This decision is entirely consistent with a finding that the claimant can no longer stand 9 hours per day. However, claimant's ability to stand 9 hours per day prior to the alleged onset date, and the absence of evidence of meaningful deterioration, strongly suggests she is not as limited as alleged. Nor is the evidence consistent with the claimant's mental health allegations. As explained above in my assessment of the paragraph B criteria, the evidence outside of the claimant's subjective allegations simply does not support such debilitating symptoms.

[TR 57]. The record clearly contains evidence inconsistent with Plaintiff's subjective complaints, and which supports the RFC found by the ALJ. *See Gina R. v. Comm'r*, No. 3:19-CV-2038-BK, 2021 WL 1209198, at *3-4 (N.D. Tex. Mar. 30, 2021) (finding substantial evidence for the ALJ's RFC assessment where the full medical record did not support the limitations put forth by the consultative examiner); *Martinez v. Saul*, No. SA-20-CV-00869-ESC, 2021 WL 2253912, at *5-6 (W.D. Tex. June 3, 2021) (finding substantial evidence for the RFC where the ALJ considered all objective medical evidence in the record).

As an aside, Plaintiff dedicates most of her argument to the fact that the ALJ found that because she stopped seeing her rheumatologist her symptoms were controlled [Dkt. 18 at 13]. The ALJ did reference Plaintiff's cessation of treatment in his decision; however, the Commissioner argues, and the Court agrees, that such error, if any, would be harmless because the ALJ did not base his subjective symptom evaluation on Plaintiff's failure to exhaustively pursue treatment alone, but also relied on the other factors, including the mostly normal objective medical evidence, the opinions of state agency medical consultants, Plaintiff's strenuous work activity leading to the alleged onset date, her reported daily living activities during the relevant period, and inconsistencies in the record. *See Klaus v. Colvin*, No. 4:15-cv-0593, 2016 WL 4573878, at *16 (N.D. Tex. Aug. 4, 2016), *report and recommendation adopted*, No. 4:15-cv-0593, 2016 WL 4539179 (N.D. Tex. Aug. 31, 2016) (ALJ's failure to consider lack of insurance was harmless error where the ALJ did not make his credibility determination solely on Plaintiff's inconsistent treatment and non-compliance).

## CONCLUSIONS AND RECOMMENDATION

Accordingly, the Court recommends the Commissioner's decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 9th day of December, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE